UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

TRAMMEL HUBBARD, )
)
    Petitioner, ) 1:10-cv-63/1:08-cr-76-01
)
v. )
) Judge Curtis L. Collier
UNITED STATES OF AMERICA, )
)
    Respondent. )

## **MEMORANDUM**

This matter comes before the Court on the motion of *pro se* petitioner[1] Trammel Hubbard ("Hubbard" or "Petitioner") to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File 20, Petition). Pursuant to the Court's Order, the United States filed a response to Petitioner's motion (Court File No. 24, Government's Response).

The underlying criminal case in this Court was *United States of America v. Trammel Hubbard*, Criminal Docket No. 1:08–cr–76, filed on June 24, 2008. The motion, together with the files and record in this case, conclusively show Petitioner is entitled to no relief under 28 U.S.C. § 2255. For the following reasons, the Court has determined an evidentiary hearing is unnecessary, *see United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993), and Petitioner's § 2255 motion[2]

---

[1] Technically, a party bringing a motion under 28 U.S.C. § 2255 is a moving party rather than a petitioner for writ of habeas corpus. *See, e.g., United States v. Sanders*, 3 F. Supp. 2d 554, 556–58 (M.D. Pa.1998) (discussing similarities and differences between habeas corpus petitions under 28 U.S.C. § 2241 and 2254, and motions under 28 U.S.C. § 2255). Hubbard will be referred to as Petitioner, however, for ease of reference.

[2] In accordance with Rule 4 of the Rules Governing Section 2255 Proceedings, the Court has considered all of the pleadings and filings in Petitioner's § 2255 motion filed herein, and all the files, records, transcripts, and correspondence relating to Hubbard's conviction in Criminal Docket No.

1

will be **DENIED** for lack of merit (Court File 20).

I.   PETITIONER'S MOTION

On March 19, 2010, Petitioner filed his motion to vacate. The motion is dated March 15, 2010. In the motion he raises five grounds: Ground 1, Involuntary guilty plea; Ground 2, Denial of psychological evaluation; Ground 3, Ineffective assistance of counsel; Ground 4, Unconstitutionally vague indictment; and Ground 5, Excessive sentencing disparity. He also requests that the Court appoint counsel to represent him, that he be afforded a hearing on his motion, that he be allowed to amend and modify his motion to assert other grounds, and that his sentence and conviction be set aside.

II.   FACTS

Petitioner's case started with his indictment by the grand jury on June 24, 2008 (Court File No. 1, Indictment). The indictment contained only one count and charged Petitioner with "knowingly, intentionally and without authority possess[ing] with intent to distribute five (5) grams or more of a mixture and substance containing cocaine base ("crack"), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B). Petitioner appeared before United States Magistrate Judge William B. Mitchell Carter on September 24, 2008, for his initial appearance and arraignment. Magistrate Judge Carter appointed Federal Public Defender Anthony Martinez to represent Petitioner. Mr. Martinez is an experienced attorney who has represented a large number of criminal defendants in this court. He is a highly skilled and

---

1:08-CR-76, which will be cited by the Court File Number assigned to the particular pleading or motion (e.g., "Court File No. 20, Petition.").

competent attorney.

On November 13, 2008, Petitioner appeared before the undersigned and entered a guilty plea to the one count (Court File No. 14, Plea Hr'g Mins.; Court File No. 21, Plea Hr'g Tr.). His guilty plea was the result of a written plea agreement he had entered into with the Government (Court File No. 15, Plea Agreement). As is the Court's habit, the Court complied with the requirements of Fed. R. Crim. P. 11. At the beginning of the hearing, the Court had Petitioner sworn. The Court inquired of Petitioner whether he was satisfied with his attorney and the representation he had received. Petitioner advised the Court he was satisfied with his attorney and the representation. Then the Court inquired of Petitioner's mental status and was assured by counsel that Petitioner was competent to enter a guilty plea. The Court detected nothing about Petitioner, his demeanor, his answers, or his responses that raised any questions in the Court's mind as to Petitioner's competence to enter a guilty plea. The Court then went over the elements of the charge and asked Petitioner whether he understood what the charges were. Petitioner was advised of the maximum punishment he was facing by the Assistant U.S. Attorney. The plea agreement Petitioner had entered into with the Government was introduced into evidence (*id.*). Paragraph 4 of the plea agreement contained the factual basis for Petitioner's guilty plea. It provides as follows:

> 4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts which satisfy these elements. These are the facts submitted for the defendant's guilty plea. They do not necessarily constitute all the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.
>
> a) On March 21, 2008, Chattanooga Police Officer Todd Royval saw a vehicle on East 28th Street in Chattanooga, Tennessee, that matched the description of a vehicle sought in another investigation. As Officer Royval watched, the vehicle ran a stop sign. Officer Royval attempted to stop the vehicle, but it continued several blocks without

> stopping.
>
> b) When the vehicle attempted to turn on grass, it slid into a building. The driver, Trammel Hubbard, ran off on foot. Officer Royval was able to catch Hubbard after a short chase, and saw him throw a baggie to the ground. The officer recovered a baggie containing crack cocaine a few feet from where the defendant was stopped. A second officer, searching the abandoned vehicle, found a set of digital scales with white powdery residue on it inside the center console of the vehicle. The vehicle Hubbard was driving was a rental car. Hubbard had $750 in cash on his person.
>
> c) The substance in the baggie was analyzed and proved to be greater than five grams of cocaine base. The rough weight of the cocaine base was 41.5 grams. This is a distribution amount of cocaine base. The defendant admits that he possessed the cocaine base with the intent to distribute it. The scales, the rental car, and the large amount of money are all indicia of drug distribution.
>
> d) The above-described events took place in the Eastern District of Tennessee.

(Court File No. 15). Petitioner acknowledged the factual basis was true and correct. He was advised by the Court of the rights he was relinquishing by pleading guilty. He was advised that his sentencing would be determined by the Court and the Court would consult the United States Sentencing Guidelines. When asked by the Court if he was pleading guilty because he was in fact guilty, he swore under oath that he was guilty of the charge.

Following the acceptance of Petitioner's guilty plea, the Court ordered that a Presentence Investigation Report ("PSR") be prepared. The report used the 2008 version of the Sentencing Guidelines. The PSR determined that Petitioner was responsible for 32.8 grams of crack cocaine, which resulted in a base offense level of 26 (PSR ¶¶ 9, 14). He received a two-level increase for reckless endangerment and a three-level reduction for acceptance of responsibility. This brought Petitioner's total offense level to 25 (*id.* ¶¶ 18, 20-21). Petitioner qualified as a career offender

4

under the Guidelines, however, so this increased his offense level to 31 (*id.* ¶¶ 23-25).

Petitioner had an extensive criminal record. It began when he was twelve years old (*id.* ¶¶ 28-50). His prior convictions include crimes ranging from traffic license violations to aggravated robbery (*id.*). Of primary concern was that Petitioner had been convicted of five prior drug offenses since turning eighteen (*id.*). When Petitioner committed the present offense, he was on probation for both a drug trafficking offense and aggravated assault (*id.* ¶ 52). Totaling all of the criminal history points resulting from his long criminal history, Defendant had 15 criminal history points. This would have placed him in Criminal History Category VI even if he did not qualify as a career offender (*id.* ¶¶ 33, 49). At an offense level of 31 and a criminal history category VI, Petitioner's advisory Guidelines range was 188 to 235 months (*id.* ¶ 48). Due to the quantity of crack cocaine, Petitioner also faced a five-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B) (*id.* ¶ 48).

The Court adopted the PSR's calculations as accurate, without objection, and on March 5, 2009, imposed a within-Guidelines range sentence of 220 months' imprisonment (Court File No. 19, Judgment). Petitioner's judgment was entered on March 17, 2009 (*id.*). Petitioner did not file a direct appeal.

### III. STANDARD OF REVIEW

Section 2255 of Title 28, United States Code, provides that a prisoner in custody under sentence of a federal court may move the court which imposed the sentence to vacate, correct, or set aside a sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the

> sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the Petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000); *United States v. Abbott*, 975 F. Supp. 703, 705 (E.D. Pa. 1997).

Where a constitutional error is alleged, in order to obtain relief under § 2255, the record must reflect a Constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637–38, 113 S.Ct. 1710, 1721–22, 123 L.Ed.2d 353 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). To merit relief pursuant to 28 U.S.C. § 2255, a petitioner must demonstrate: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). "To prevail under 28 U.S.C. § 2255, a defendant must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process," *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994) (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)). After his conviction and sentence are final, "a prisoner must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief. *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).

**IV.     DISCUSSION**

The Court will discuss each claim in the order in which it was listed. However, the Court notes Petitioner faces an even heavier burden because he failed to appeal his conviction and sentence. As the Government argues, Petitioner's challenge to the validity of his guilty plea is procedurally defaulted because he could have raised it on direct appeal. "[E]ven the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998). When as here a petitioner fails to raise the issue on direct appeal but raises it for the first time on collateral review the petitioner has procedurally defaulted the claim and for it to then be considered the petitioner must demonstrate "cause" for the default as well as "actual prejudice" resulting from the error, or actual innocence. *Bousley*, 523 U.S. at 622; *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Peveler v. United States*, 269 F.3d 693 (6th Cir. 2001). Petitioner has attempted to surmount this hurdle by claiming his counsel rendered him ineffective assistance of counsel. The "hurdle" petitioner must clear to excuse his procedural default is "intentionally high . . . , for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Even though Petitioner has raised ineffective assistance of counsel as cause, he has failed to establish his counsel was ineffective and therefore has failed to establish cause and "actual prejudice."

A. **Ground 1, Involuntary guilty plea**

Hubbard first argues that his conviction and sentence are void because of his alleged history of mental health issues and mental retardation. This alleged mental condition then resulted in his plea of guilty "not voluntarily, understandingly, nor intelligently made . . . ." As the Government points out in its response, at no time did Petitioner ever mention any mental illness to the Court

7

(Court File No. 24 at 10). In response to a question from the Court as to whether he had ever been treated for any mental illness, Petitioner answered negatively (Court File No. 21 at 2). The Court was and is entitled to rely upon Petitioner's sworn statements, especially when he has not offered any reason why he would have been untruthful or any evidence that supports his claim he did in fact suffer from a mental illness. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "It is well-settled that where a court scrupulously follows the requirements of Fed. R. Crim. P. 11, 'the defendant is bound by his statements in response to that court's inquiry.'" *Hobson v. United States*, No. 2:04-cv-365, 2007 WL 2955587, at *3 (E.D. Tenn. Oct. 9, 2007) (citation and internal quotation marks omitted).

In the PSR, both Petitioner and his mother reported that he had never received any mental health treatment or counseling (PSR ¶ 70). And from the Court's own observation of and interaction with Petitioner, it detected no indication of incompetence or mental illness. In fact the Court specifically inquired as to Petitioner's competence to plead guilty. When counsel was asked whether he thought Petitioner was competent to plead guilty in the presence of Petitioner, counsel responded he thought Petitioner was competent. Petitioner did not challenge counsel's statement (Court File No. 21 at 3). Thus, there is no basis for the Court to conclude that Petitioner at the time of his guilty plea and sentence was suffering from a mental illness that interfered with his comprehension of the proceedings.

Petitioner alleges the Court did not address him in open court and inform him of the constitutional rights he would be waiving by pleading guilty. The record flatly contradicts this argument. The Court followed the requirements of Rule 11 and personally engaged Petitioner in going over the rights he would be waiving, including all of the claimed failures Petitioner cites.

8

For these reasons the Court will **DENY** Petitioner's motion on this ground.

B. **Ground 2, Denial of psychological evaluation**

Petitioner claims he "was denied a full and complete psychological evaluation, and his counsel rendered ineffective assistance by failing to ask the Court for a psychological evaluation of Movant, despite counsel's knowledge of Movant's documented psychological infirmities."

This issue was addressed in part above. Although Petitioner claims he is and "continues to be" psychologically unsound, there is no evidence before the Court that supports that contention. Petitioner has never supplied the Court with any evidence that suggests he suffers from a mental illness. During his guilty plea colloquy he denied ever being treated for any mental illness. His counsel in his presence stated he was competent to plead guilty. During his interview he never revealed to the Probation Officer preparing his PSR that he had a mental illness nor did his mother. Neither during his guilty plea nor at his sentencing did the Court detect anything that would lead the Court to suspect Petitioner was incompetent or suffering from a serious mental illness. Suffice it to say the Court has nothing before it now that would lead the Court to conclude Petitioner at the time of his guilty plea and sentencing was incompetent or suffering from a serious mental illness. Petitioner has the burden of making a threshold showing that his mental condition is "seriously in question." *Miller v. Bell*, 655 F. Supp. 2d 838, 851 (E.D. Tenn. 2009). To meet this burden Petition must supply particular facts and not just make general allegations of a need for a mental evaluation.

Since there was nothing in the record suggesting any question regarding Petitioner's mental condition, there was no error in not having Petitioner evaluated. Moreover, Petitioner has provided no evidence that his counsel was ever made aware of any mental illness on the part of Petitioner. In fact, the record is just the opposite. When asked in open court in the presence of Petitioner

9

whether he thought Petitioner was competent, counsel responded he did think Petitioner was competent and Petitioner did nothing to contradict that statement. Petitioner claims that counsel had knowledge of Petitioner's documented psychological infirmities and that counsel had knowledge that Petitioner was mentally incompetent. However, when the Court inquired of counsel of Petitioner's competency, Petitioner did nothing to contradict counsel. One would think that Petitioner would have corrected counsel when the question was asked and would have informed the Court of the "documented psychological infirmities" when the Court asked Petitioner whether he had ever been treated for any mental illness. Petitioner was under oath when he denied a history of mental illness. In this petition he offers no evidence whatsoever of a mental illness or mental incompetency at the time of the guilty plea or sentencing.

For these reasons the Court will **DENY** Petitioner's motion on this ground.

### C. Ground 3, Ineffective assistance of counsel

Under this ground Petitioner argues he was denied his right to effective assistance of counsel in violation of the Constitution. He broadly alleges his "counsel was ineffective in his representation of [Petitioner] in all pretrail [sic] and prehearing proceedings, and such representation deprived [Petitioner] of his rights under the Constitution." Petitioner enumerates seventeen separate allegations of ineffective assistance (Court File No. 20 at 16-23, Petition).

Most of these allegations involve issues the Court specifically covered with Petitioner at his guilty plea hearing and/or his sentencing hearing. So even if counsel did not discuss these with Petitioner the Court did so and Petitioner could not have suffered any prejudice. The Court specifically advised Petitioner of his right against self-incrimination (Petition ¶ 21(d)(i); Court File No. 21 at 4, Plea Hr'g Tr.); informed and advised him of the nature and cause of the accusations

against him (Petition ¶ 21(d)(ii); Plea Hr'g Tr. at 6-7); advised him of his right to confront and cross-examine witnesses against him (Petition ¶ 21(d)(iii); Plea Hr'g Tr. at 3-4); advised him of his right to maintain his innocence and his right to persist in his plea of not guilty (Petition ¶ 21(d)(iv); Plea Hr'g Tr. at 3); advised him of the collateral consequences of entering a plea of guilty (Petition ¶ 21(d)(v); Plea Hr'g Tr. at 3); advised him and required the Assistant United States Attorney to advise him of the maximum punishment he faced if he pleaded guilty and the mandatory minimum punishment he faced (Petition ¶ 21(d)(xi); Plea Hr'g Tr. at 7); and advised him that by pleading guilty he would be admitting guilt to the charge and there would be no trial (Petition ¶ 21(d)(xii); Plea Hr'g Tr. at 4).

Petitioner also claims counsel advised him "the case against him was hopeless and that it would be futile to investigate the merits of [Petitioner's] constitutional rights, and, as a result, that [Petitioner] had no choice but to enter a guilty plea" (Petition ¶ 21(d)(vi)). Given the facts of this case--that is, that Petitioner fled in his automobile when a Chattanooga police officer attempted to stop him, then exited the vehicle and fled on foot, and was apprehended; during the chase the pursuing officer saw Petitioner throw a baggie containing crack cocaine to the ground; after the apprehension, a search of the vehicle Petitioner was driving revealed a set of digital scales and a white powdery residue in the car; and Petitioner had $750.00 in cash on his person--it is difficult to see a credible defense to the charge. If counsel did advise Petitioner his case was hopeless this would not have been ineffective assistance of counsel but rather a realistic appraisal of the case against Petitioner. In light of the strong evidence against him, there is no reason to think Petitioner would have escaped a conviction had he gone to trial. And had he gone to trial he would likely have received a higher sentence due to the loss of the three-point reduction in his Guidelines for

11

acceptance of responsibility. Petitioner has not argued and has not demonstrated that "there is a reasonable probability that, but for counsel's [advice and actions], he would not have pleaded guilty and instead would have insisted on going to trial." *Short v. United States*, 471 F.3d 686, 691-92 (6th Cir. 2006) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Based upon the facts of the case, it is also difficult to see a plausible constitutional attack on the evidence. Petitioner agreed that the facts contained in the factual basis were correct. The Constitution was not implicated until Petitioner was actually apprehended by the officers. He threw away the baggie of crack cocaine so no constitutional violation is involved there since it was abandoned. The vehicle was a rental vehicle and not owned by Petitioner. It was searched after Petitioner abandoned it and the search was incident to Petitioner's arrest and the vehicle being secured. Counsel was not derelict in failing to file motions to suppress the drugs because such a motion would have been futile (Petition ¶ 21(d)(xiii)). Counsel is under no obligation to file frivolous or futile motions. Moreover, a claim based upon counsel's failure to file a motion to suppress is not properly before the Court. The Supreme Court has stated that issues based upon the Fourth Amendment, such as a motion to suppress, may not be raised in a § 2255 motion. *Stone v. Powell*, 428 U.S. 464, 494 (1976). "[I]t is clear that the [Supreme] Court intends for Fourth Amendment claims to be limited in § 2255 proceedings as they are limited in § 2254 proceedings." *United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993).

Counsel also was not derelict in "failing to investigate and prepare for trial" (Petition ¶ 21). Petitioner pleaded guilty. He swore this was his own choice and that no one had forced him to do so. Once Petitioner decided he wished to plead guilty there was no need to investigate and prepare for trial. Counsel was not ineffective since Petitioner decided to plead guilty. This is also the case

with respect to Petitioner's claims counsel was ineffective for failing to formulate a defense for him, failing to interview any witnesses, failing to properly make requests for discovery, and failing to prepare or develop a reasonable defense for Petitioner (Petition ¶¶ 21(d)(viii), (ix), (x), (xv)).

The allegation counsel was ineffective for failing to prepare for or present any mitigating circumstances or evidence at or during Petitioner's sentencing is contradicted by the record. Counsel in fact did argue mitigating circumstances. According to the Government's response, counsel "argued that petitioner was a gentle man who had a terrible childhood. The record indicates that counsel capably represented petitioner at sentencing, obtaining a sentence below that which he might have otherwise received. More specifically, defense counsel secured a three-level reduction in Petitioner's offense level (and, by extension, his Guidelines range) by persuading him to plead guilty, minimized his recidivist tendencies, and focused the Court on Petitioner's desire to support his family, and thereby persuaded the Court to impose a within-Guidelines sentence" (Court File No. 22). Given the evidence of Petitioner's clear guilt of the crime and his lengthy criminal history, it is apparent counsel did an able job in arguing mitigating factors, contrary to Petitioner's assertions.

Finally, Petitioner claims counsel was derelict in failing to consult and communicate with Petitioner at crucial stages prior to Petitioner entering the plea agreement (Petition ¶ 21(d)(xvii). This also is contradicted by the record. At the beginning of Petitioner's guilty plea hearing, the Court asked him if he had had enough opportunity to discuss his case with his counsel and was he satisfied with counsel's representation. Petitioner under oath told the Court he had had sufficient opportunity to discuss his case with counsel and that he was satisfied with counsel's representation (Court File No. 21 at 3). The Court is entitled to accept Petitioner's sworn averments over his

unsupported claims in his petition.

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

Applying the *Strickland* standard, it is apparent both that counsel's performance with respect to the claimed deficiencies was reasonable under prevailing professional norms and Petitioner did not suffer any prejudice from the claimed deficiencies. Accordingly, the Court will **DENY** Petitioner's motion on this ground.

### D. Ground 4, Unconstitutionally vague indictment

Under this ground, Petitioner claims he "was erroneously convicted and sentenced based upon an unconstitutionally vague indictment in this matter. The indictment alleged that [Petitioner] committed the offense of possessing with intent to distribute five (5) or more grams of "crack." Consequently, the indictment is misleading, incorrect, []and unconstitutionally vague concerning the actual drug type and amount for which [Petitioner] was charged in this case." He faults counsel

for failing to challenge the allegedly defective indictment which failed to allege the precise drug and its exact amount. This defect then resulted in the Court having no jurisdiction in this matter.

Petitioner is incorrect in all respects. The indictment actually alleged Petitioner "knowingly, intentionally, and without authority possessed with intent to distribute five (5) grams or more of a mixture and substance containing cocaine base ("crack"), a Schedule II controlled substance." The applicable statute, 21 U.S.C. § 841, makes it a federal offense for a person to "knowingly or intentionally . . . possess with intent to . . . distribute . . . a controlled substance." Cocaine and cocaine base are controlled substances. Cocaine base has its own proscribed sentencing scheme. 21 U.S.C. § 841(b)(1).

For these reasons the Court will **DENY** Petitioner's motion on this ground.

### E. Ground 5, Excessive sentencing disparity

Petitioner's last claim is that he was "excessively sentenced solely because the substance for which he was charged alleged 'crack' rather than powder cocaine." He alleges the actual cocaine content of the substance "was likely less than three (3) grams of powder." He therefore concludes his sentence of 220 months was erroneous and excessive.

This is another claim that is procedurally defaulted. Petitioner could have raised it on direct appeal but did not do so. He has not demonstrated cause and prejudice.

Petitioner apparently argues there is something unconstitutional in the penalties for a crack cocaine offense being higher than a powder cocaine offense. He cites no authority for this proposition but does cite to *Kimbrough v. United States*, 128 S.Ct. 558 (2007) and *United States v. Tupuola,* 587 F.3d 1025 (9th Cir. 2009). His reliance on *Kimbrough* and *Tupuola* is misplaced. The Supreme Court in *Kimbrough* did not hold that it was unconstitutional for Congress to enact

16

greater penalties for crack cocaine offenses than for powder cocaine offenses. The Court merely held under the United States Sentencing Guidelines it was appropriate for a court to take into account the different treatment afforded to the two substances. It did not hold that a sentencing court was required to treat the two the same. The *Tupuola* case offers Petitioner even less support. There the Ninth Circuit affirmed the district court's decision that it did not have jurisdiction to reduce two defendants' sentences based upon the adoption of Amendment 706 by the United States Sentencing Commission which addressed the sentencing disparity between crack cocaine and powder cocaine. Since each defendant had been sentenced based upon their qualifying as career offenders, their sentences were not based on the crack cocaine guidelines. 587 F.3d at 1028.

Petitioner's implication that a greater sentence for crack cocaine than for powder cocaine is unconstitutional has been repeatedly rejected by the courts.

> Defendant's constitutional argument is unpersuasive. We have consistently held that the crack/powder disparity withstands constitutional scrutiny, including challenges based on due process, equal protection, and the Eighth Amendment. *See United States v. Blair*, 214 F.3d 690, 702 (6th Cir. 2000), cert. denied, 531 U.S. 880, 121 S.Ct. 191, 148 L.Ed.2d 132 (2000); *United States v. Bingham*, 81 F.3d 617, 630-31 (6th Cir. 1996) (equal protection); *United States v. Hill*, 79 F.3d 1477, 1488-89 (6th Cir. 1996) (Eighth Amendment and equal protection); *United States v. Pickett,* 941 F.2d 411, 418-19 (6th Cir. 1991) (Eighth Amendment and substantive due process). *Kimbrough* said nothing to suggest otherwise and provides no reason to reconsider our constitutional rulings on the facts of this case.

*United States v. Berry*, 290 F. App'x 784, 793 (6th Cir. 2008).

To the extent Petitioner takes issue with the sentences for crack cocaine, he should take his complaint to Congress. His sentence was in accord with applicable law and was not excessive or erroneous.

Petitioner's assertion that the actual cocaine content of the substance he possessed was likely less than three grams of powder is difficult to follow. He pleaded guilty to the crime alleged in the

17

indictment. The factual basis stated the amount was more than five grams. Petitioner swore the factual basis was correct. According to the Government the rough weight of the crack cocaine was 41.5 grams. The PSR held Petitioner responsible for 32.8 grams of crack cocaine (PSR ¶¶ 9,14). Moreover, similar to the defendants in the *Tupuola* case, Petitioner's Guidelines range and ultimate sentence was determined by his status as a career offender. This is fatal to his argument.

For these reasons the Court will **DENY** Petitioner's motion on this ground.

### F. Appointment of Counsel

Considering the Court's disposition of Petitioner's motion for the above reasons, the Court will **DENY** Petitioner's request for appointment of counsel. The Court also deems an evidentiary hearing unnecessary and will DENY that request.

## V. CONCLUSION

None of the grounds asserted by Petitioner supports a finding his counsel's assistance was ineffective, either at sentencing or on direct appeal, nor that his sentencing Guidelines calculation was inaccurate. For the reasons stated above, Petitioner's sentence was not imposed in violation of the Constitution or laws of the United States nor is it otherwise subject to collateral attack, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will therefore be **DENIED** (Court File No. 20).

In addition to the above, this Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal will be **DENIED**. Fed. R. App. P. 24. Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Fed. R. App. P. 22(b), or reasonable jurists would disagree on the resolution of this matter, thus a

certificate of appealability **SHALL NOT ISSUE**. *Slack v. McDaniel*, 529 U.S. 473, 484–85, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

    An Order shall enter.

                                        **/s/**
                                        **CURTIS L. COLLIER**
                                        **UNITED STATES DISTRICT JUDGE**